UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG THORNER et al., | Civil Action No. 09-1894 (GEB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| SONY COMPUTER ENTERTAINMENT AMERICA, INC. et al., | |
| Defendants. | |

RECEIVED
NOV 2 0 2009
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**ARPERT, U.S.M.J.**

This matter comes before the Court on Defendant Sony Computer Entertainment America, Inc.'s ("Sony") Motion to disqualify attorney Greg M. Diehl ("Diehl") and the law firm of Diehl Servilla, LLC ("Diehl Servilla") as counsel for Plaintiffs Craig Thorner ("Thorner") and Virtual Reality Feedback Corporation (collectively "Plaintiffs") [dkt. entry no. 33]. The Court has fully reviewed the parties' written submissions and conducted oral argument on October 22, 2009. For the reasons set forth below, Sony's Motion is granted.

I.  **BACKGROUND**

In this litigation Plaintiffs claim that Sony infringes Thorner's U.S. Patent Nos. 5,684,722 (the "722 patent") and 6,422,941 (the "941 patent") through the sale of vibrating headphones and handheld controllers used in conjunction with Sony's PlayStation® products. Plaintiffs' Amended Complaint also sets forth common law causes of action for, *inter alia*, attorney malpractice, fraud, and conspiracy arising from Defendants' allegedly collusive and deceitful efforts to induce Thorner to grant certain rights to his patents on unfair terms.

In September 2004, Immersion Corporation ("Immersion") obtained an $82 million

judgment against Sony for infringement of patents related to computer game sensation generators. Shortly thereafter, Immersion brought an action for infringement of the same patents against Electro Source LLC, now known as Performance Designed Products LLC ("PDP/Electro Source"). Plaintiffs claim that Sony and PDP/Electro Source knew Thorner's patents might invalidate Immersion's patents. Plaintiffs also claim that in May and June 2005, PDP/Electro Source's attorneys negotiated a license of Thorner's patents and at the same time granted Sony an option to become a party to the license. With respect to the license agreement, Thorner claims he was misled by Defendants PDP/Electro Source and Sony and their lawyers, including Sony's in-house counsel Defendant Riley Russell and Defendant Gregory Gewirtz, an attorney at the law firm of Lerner, David, Littenberg Krumholz & Mentlik, LLP ("the Lerner David firm"), (1) when they explained that Sony could not enter a direct license agreement with Thorner while seeking a new trial in the *Immersion* case and (2) when they described the fairness of the license agreement.

On March 8, 2006, Sony's motion for a new trial in the *Immersion* case was denied and two weeks later Immersion sued Thorner for cooperating with Sony and PDP/Electro Source. Thorner then contacted Defendant Gewirtz based on his alleged promise of representation should Thorner be sued by Immersion. According to Thorner, Gewirtz refused to represent him. Thereafter, Thorner contacted Diehl, who agreed to defend him against Immersion's suit.

The instant Motion arises out of Diehl's employment with the Lerner David firm during the period 2001-2004 during which the firm represented Sony in a variety of patent prosecution and litigation matters. Diehl contends that his employment with Lerner David ended in June 2004 and that prior to his representation of Thorner in 2006 he had never heard of either Thorner

or the *Immersion* case and possessed no knowledge of the video game vibration technology at issue in the instant litigation. Diehl also contends that he was unaware of Lerner David's communications with Thorner with respect to the PDP/Electro Source license agreement while at the same time the firm was representing Sony in the *Immersion* case. Nonetheless, Diehl acknowledges that he contributed to the prosecution of various Sony patent applications and to the defense of two litigated matters involving Sony products.

A.   **Sony's Motion to Disqualify**

Sony argues that Diehl should be disqualified because his representation of Plaintiffs violates the Rules of Professional Conduct (the "RPCs"). Specifically, Sony cites RPCs 1.9(a)-(c) and 1.10 and contends that while Diehl was associated with the Lerner David firm both he and other associates at the firm represented Sony in substantially related matters and his continued representation is likely to lead to the actual disclosure of Sony's confidential information to Sony's detriment. Sony further contends that because Diehl should be prohibited from representing Plaintiffs for reasons other than his own personal interest, the exception outlined in RPC 1.10(a) does not apply.

Sony asserts that it retained the Lerner David firm in 2003 to review U.S. Patent Nos. 5,674,127 and 5,947,825 (the "Lightstream Patents"). Sony claims that the subject matter of the Lightstream Patents is related to the patents presently asserted against it by Plaintiffs because both "are concerned with enhancing player experience by submersing the player into an environment of video, audio, and tactile sensations such as vibration feedback while playing a videogame." (Sony's Br. at 3.) Sony also retained the Lerner David firm in 2003 for representation in the *Okor v. Sega of Am. et al.*, Case Nos. 1:98-CV-12176-12177 (D. Mass.)

3

litigation. In that litigation, Diehl spent time on Sony's behalf conducting research, drafting appellate briefs and preparing for settlement discussions. Sony also retained the Lerner David law firm for representation in the *Hoefer v. Sony Computer Entm't Am., Inc.*, No: 03-CV-9445-RMB (S.D.N.Y. Nov. 26, 2003) litigation during which Diehl discussed Sony's litigation position with opposing counsel, conducted research and drafted a motion to transfer venue as well as reviewing Sony's accused product. Sony argues that as a result of Diehl's employment with the Lerner David firm including, but not limited to, his involvement in the *Okor* and *Hoefer* litigations, he had numerous conversations with Sony's in-house counsel concerning litigation strategy and had access to pertinent Sony files and technical information including materials pertaining to how the PlayStation® systems communicate with the controllers. Lastly, Sony argues while Diehl was employed by the Lerner David firm, other attorneys in the firm were representing Sony in *Immersion Corp. v. Sony Computer Entm't Am., Inc. et al.*, a case at the center of Plaintiffs' allegations in the instant matter. Consequently, Sony contends, Diehl had access (even informally) to additional information related to the instant action.

### B.     Plaintiffs' Opposition to Sony's Motion

Plaintiffs oppose Sony's Motion arguing, (1) disqualification under RPC 1.9(a) is unwarranted because the facts underlying the instant matter and Diehl's prior work for Sony are not related; (2) RPC 1.10(a) is inapplicable because Diehl never received any information on the subject of Sony's vibrating controllers or headphones during the course of his employment with the Lerner David firm; (3) RPC 1.9(b) is inapplicable because Diehl did not work for the Lerner David firm when it actually represented Sony in the *Immersion* case; and (4) the balance of hardship between Plaintiffs and Sony weigh against disqualification.

4

Plaintiffs argue that the RPCs dictate disqualification only "where the issues between the former and current suits are *practically the same* or where there is a *patently clear relationship* between them." *Home Care Indus. Inc. v. Murray*, 154 F. Supp. 2d 861, 866 (D.N.J. 2001) (quoting *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 472 (1980)). Plaintiffs claim that Sony has not satisfied the heavy burden required by the substantial relationship test because "[t]here is simply no relationship between the facts and issues of this case and the patent prosecution and other matters identified by Sony that Diehl worked on more than five years ago." (Pls.' Opp'n Br. at 8.) In this regard, Plaintiffs argue that any information obtained during Diehl's patent prosecution work and in the *Okor and Hoefer* litigations is not substantially related to the issue of whether Sony's vibrating controllers and headphones infringe Thorner's patents. Specifically, Plaintiffs argue that the Lightstream Patents on which Diehl worked for Sony were directed to the PlayStation® console which actually produces the video game, while the patents at issue in the instant matter are related to the structure and operation of Sony's vibrating handheld controllers and headphones. Therefore, Plaintiffs argue, "[n]othing, in short, that Diehl might remember about the 'the primary microprocessor, various subprocessors, and other hardware and software aspects' (Sony Br. at 14) of the PlayStation® console has any bearing on this case." *Id.* at 10.

Plaintiffs claim that "Sony's quotation from the '825 patent . . . [(a Lightstream patent)], namely, that the patent states at the outset that it "'relates to games that 'are multisensory in that the entertainment system stimulates the players through the visual, auditory, tactile, kinesthetic senses'". . . clearly refer[s] to the prior art, and *not* the invention of the '825 patent." *Id.* at 11. Plaintiffs also claim that, contrary to Sony's contentions, "Diehl would not (and did not) need to

know how Sony's hand-held controllers or headphones generate lights, vibrations, or sound to analyze the claims of the Lightstream patents." *Id*. at 12.

Additionally, Plaintiffs argue that Diehl never discussed litigation or settlement strategy with Defendant Russell in connection with the *Okor* or *Hoefer* matters and that Sony exaggerates Diehl's participation in both matters. First, Plaintiffs explain that Diehl's participation in the *Okor* case was "limited to writing *one* 14-page appeal brief in 2001, upholding summary judgment of noninfringement against a *pro se* plaintiff . . . [and] there was nothing to settle and no strategy was involved in opposing a frivolous appeal." *Id*. at 13. Next, Plaintiffs explain that "Diehl's involvement with the *Hoefer* case was limited to working on a motion to transfer [and] [t]here was no 'strategy' to discuss." *Id*.

In addition, Plaintiffs argue that the fact Diehl was working at the Lerner David firm while other lawyers there were representing Sony in the *Immersion* case should not result in Diehl's disqualification pursuant to RPC 1.9(b) because Diehl had no knowledge of the *Immersion* case while he was working at the firm and did not learn any details of the case until after he was retained by Plaintiff in March 2006. Plaintiffs also argue that Sony's contention that Diehl's continued representation of Plaintiffs is likely to lead to an actual disclosure of Sony's information in violation of RPC 1.9(c) should not result in Diehl's disqualification because, Plaintiffs claim, Diehl does not recall receiving or reviewing any information concerning Sony's vibrating controllers or headphones in the course of his employment with the Lerner David firm and, therefore, he can not use any such information to Sony's disadvantage. Plaintiffs further claim that technical information as to the workings of Sony's controllers and headphones is generally known as the products are readily available and easily disassembled. *See id*. at 15.

Lastly, Plaintiffs argue that even if the Court determines that these matters are substantially related (which Plaintiffs argue is not the case) "disqualification should still be denied in view of the hardship [P]laintiffs would suffer, if Diehl was disqualified, and the absence of any real harm to Sony if he is not." *Id.* (citations omitted). Plaintiffs contend that disqualification of Diehl would place an undue burden upon Plaintiffs because they are financially troubled and would have difficulty affording another lawyer to represent them in this matter. Plaintiffs also contend that it is unlikely that a new lawyer would readily grasp the facts and issues of this case in the manner which Diehl has over the course of his representation of Plaintiffs.

### C.  Sony's Reply

In reply, Sony argues that "[i]f there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." (Sony's Reply Br. at 1) (citations omitted). Sony also argues that Plaintiffs' contention that matters must be identical to be "substantially related" is a narrow definition that does not comport with New Jersey law. Sony maintains that the matters on which Diehl previously worked are substantially related to the matters at issue in this case because they all relate to the PlayStation® controllers. For example, Sony notes that Diehl billed over 20 hours for work on U.S. Patent No. 6,514,143 ("the '143 Patent") which "describes an invention which reduces '[t]he time required to perform communications between an entertainment apparatus and a manual controller having complex and sophisticated functions which is connected to the entertainment apparatus." *Id.* at 4. Sony also notes that the type of controllers covered by the '143 Patent "are the very type of PlayStation® controllers that Plaintiffs allege Diehl 'never received any information confidential

7

or otherwise' on, and that Plaintiffs assert infringe the '941 Patent." *Id.* at 5.  Sony argues that in connection with Diehl's work on the '143 Patent, among other Sony patents,

> Diehl was provided confidential Sony information, including detailed drawings about the PlayStation® hardware and software, detailed information about the circuitry and the chips in the PlayStation® systems, engineering documents, design layouts, developer support documents, and technical manuals which fully disclosed the technical operation of all aspects of the PlayStation® systems.

*Id.* at 7.  Further, Sony argues that information regarding the control circuit and signal processing aspects of the PlayStation® systems is substantially related to the instant matter because each independent claim of the '941 Patent requires a control circuit responsive to signals generated by the computer or the video game system.  Likewise, Sony argues that Diehl's work on the Lightstream Patents is substantially related to the instant matter because a) it would have required an analysis of the Sony PlayStation® console and controllers and b) Diehl communicated with Sony's Director of Hardware Engineering and Product Service regarding PlayStation® technology, including that of the controllers.

Next, Sony argues that when matters are substantially related, there is an irrebutable presumption that confidential information was shared between the attorney and the former client, and disqualification is compelled.  Therefore, Sony contends that "Plaintiffs' repeated protestations that Diehl 'recalls little, if any' of Sony's proprietary technical information and that he did not reveal such information are also irrelevant." *Id.* at 10.

Lastly, Sony disputes Plaintiffs' claim that Diehl left the Lerner David firm before it entered an appearance in the *Immersion* case and, thus, should not be disqualified pursuant to RPC 1.9(b).  Sony argues that "the operative date is not when the Lerner David firm made an appearance in the *Immersion* case, but when the Lerner David firm began assisting Sony in that

8

case. Sony notes that according to the docket the Lerner David firm's involvement in the *Immersion* case dates back to 2001. Therefore, Diehl's employment at the Lerner David firm clearly overlaps with the time period when other attorneys at that firm were assisting Sony in the defense of the *Immersion* case.

## II. DISCUSSION AND ANALYSIS

The New Jersey Rules of Professional Conduct govern the conduct of attorneys admitted to this Court. *Greig v. Macy's Northeast, Inc.*, 1 F.Supp.2d 397, 399-400 (D.N.J. 1998). The New Jersey Rules of Professional Conduct are made applicable to attorneys admitted to this Court by Local Civil Rule 103.1, which provides in relevant part:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

L. Civ. R. 103.1(a).

In determining whether to disqualify counsel, the Court must be satisfied that the movant has proved either that the New Jersey Rules of Professional Conduct are violated or that serious doubts exist as to the appropriateness of the representation. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994); *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992). "[T]he party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Id.* (quoting *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). Here, Sony is seeking disqualification and, therefore, the burden of proof rests with it.

The Court recognizes that disqualification of counsel is a "'drastic measure which courts

should hesitate to impose except when absolutely necessary.'" *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*quoting Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Generally, motions to disqualify are disfavored because they "can have such drastic consequences." *Rohm and Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). As a result, careful scrutiny of the facts of each case is required to prevent unjust results. *See Montgomery Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J. 1999). In such cases, the Third Circuit Court of Appeals has emphasized the importance of avoiding both "the appearance as well as the actuality of professional impropriety." *Akerly v. Red Barn Systems, Inc.*, 551 F.2d 539, 544 (3d Cir. 1977). Therefore, any doubt as to the propriety of representation should be resolved in favor of disqualification. *International Business Machines, Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978); *Cordy*, 156 F.R.D. at 584.

This Court is particularly mindful that "[b]esides weighing these factors, [it] must also consider its 'obligation to maintain high professional standards and to ensure that the trial of the claims in the case will be free from taint.'" *Montgomery Academy v. Kohn*, 50 F.Supp.2d 344, 350 (D.N.J. 1999) (*quoting Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 567 (S.D.N.Y. 1987); *see also Steel v. General Motors Corp.*, 912 F.Supp. 724, 733 (D.N.J. 1995) ("Resolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'"), *aff'd sub nom, Cardona v. General Motors Corp.*, 942 F.Supp. 968 (D.N.J. 1996); *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Sav., FSB*, 944 F.Supp. 341, 345 (D.N.J. 1996).

Sony has moved to disqualify Greg M. Diehl as well as the law firm of Diehl Servilla,

1007 (D.N.J. 1995).

Here the parties do not dispute that an attorney client relationship existed between Sony and Diehl as a result of his employment at the Lerner David firm. Diehl's billing records reflect a total of approximately four-hundred hours spent on Sony related matters. Therefore, Sony qualifies as a former client and the first prong of RPC 1.9 is satisfied. No doubt Sony's and Plaintiffs' interests are presently adverse. Therefore, the third prong of RPC 1.9 is satisfied as well. The parties disagree, however, on whether Diehl's previous representation of Sony involved matters substantially similar to those involved in his present representation of Plaintiffs.

A "substantial relationship between matters exists where the 'adversity between the interests of the attorney's former and present clients has created a climate for disclosure of relevant confidential information.'" *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo*, 144 F.R.D. 235, 239 (D.N.J. 1992) (quoting *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 472 (N.J. 1980)) (disqualifying attorney because the legal and factual relationship between the prior and present representations were "strikingly similar").

Because the matters involved in Diehl's current representation of Plaintiffs are substantially related to those involved in his previous representation of Sony, he and his firm should be disqualified. In this case, Plaintiffs allege that Sony has infringed Thorner's '722 and '941 patents through the sale of vibrating headphones and handheld controllers which are used with Sony's PlayStation® products. Notwithstanding Plaintiffs' attempt to create the impression that the substance of Diehl's prior representation of Sony was entirely unrelated to the instant litigation, it is clear that those matters were more than tangentially related to Plaintiffs' present claims.

LLC based on RPCs 1.9 and 1.10. RPC 1.9(a)-(b) states, in relevant part:

> (a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
>
>> (1) whose interests are materially adverse to that person; and
>> (2) about whom the lawyer, while at the former firm, had personally acquired information protected by RPC 1.6 and RPC 1.9 (c) that is material to the matter unless the former client gives informed consent, confirmed in writing.

The prohibitions in RPC 1.9 are made applicable to a conflicted attorney's entire firm through RPC 1.10(a) which states, in part that:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by . . . RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

To determine whether a conflict exists under RPC 1.9, the Court employs a "substantial relationship test" under which each of the following prongs must be satisfied before the Court should disqualify an attorney: (1) the existence of a past attorney client relationship involving the attorney sought to be disqualified; (2) that the current representation involves the same or a matter substantially related to the former representation; and (3) that the interests of the attorney's current client are materially adverse to the interests of the former client. *Bagdan v. Beck*, 140 F.R.D. 660, 668 (D.N.J. 1991); *see Home Care Indus., Inc. v. Murray*, 154 F.Supp.2d 861, 866 (D.N.J. 2001); *Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F.Supp. 1002,

There is no question that Diehl was involved in the prosecution of patents involving technology that is related to Thorner's patents. In that capacity Diehl attended training courses on the workings of PlayStation® 2 and 3 and spoke to engineers who designed the technology of these game systems. Diehl's attempts to draw highly technical distinctions between the substance of the matters involved in his patent prosecution work and those involved in this litigation are not persuasive. Likewise, Diehl's attempts to minimize his involvement in Sony's litigated matters, by claiming that he was not exposed to any information related to the instant litigation. Diehl's arguments fail to acknowledge that as an attorney at the Lerner David firm he had access to Sony personnel, information and documents related to Sony's PlayStation® systems and products. The fact that during Diehl's employment, the firm handled multiple matters for Sony, particularly defending the PlayStation® systems and its products from third party attacks, makes it impossible to narrowly limit the type and scope of the information to which Diehl may have been privy.

### III.   CONCLUSION

For the reasons stated above, the Court finds that Sony has met its burden in establishing that RPCs 1.9 and 1.10 require the disqualification Greg M. Diehl and the law firm of Diehl Servilla, LLC as counsel for Plaintiffs Craig Thorner and Virtual Reality Feedback Corporation [dkt. entry no. 33]. Therefore, Sony's Motion to disqualify counsel is GRANTED.

An appropriate Order follows accompanies this Memorandum Opinion.

Dated:      November 20, 2009.

                                        s/ Douglas E. Arpert
                                        **DOUGLAS E. ARPERT**
                                        **UNITED STATES MAGISTRATE JUDGE**