**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG THORNER, et al., | CIVIL ACTION NO. 09-1894 (MLC) |
| Plaintiffs, | **O P I N I O N** |
| v. | |
| SONY COMPUTER ENTERTAINMENT AMERICA LLC, et al., | |
| Defendants. | |

**THE PLAINTIFFS** bring this matter before the Court requesting a stay during the pendency of an appeal to the United States Court of Appeals for the Federal Circuit. (See dkt. entry no. 206, Mot. for Stay.) The plaintiffs wish to stay enforcement of the Court's 3-18-13 Order granting defendants' motion to enforce a settlement agreement. (See dkt. entry nos. 203 & 204, 3-18-13 Mem. Op. and 3-18-13 Order.) The defendants oppose this motion, arguing that the plaintiffs have not established entitlement to a stay. (See dkt. entry no. 212, Defs. Br. in Opp'n to Mot. at 1-2 ("Defs. Opp'n Br.").) For the reasons that follow, the Court will deny the motion.

**THE COURT** notes that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Texaco, Inc.

v. Borda, 383 F.2d 607, 608 (3d Cir. 1967) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).  A stay is an extraordinary measure, and calls for the Court to exercise judgment and weigh competing interests.  United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994); Texaco, 383 F.2d at 608.

    **THE COURT** considers the following factors when determining whether to issue a stay: (1) whether the stay applicants have made a strong showing that they are likely to succeed on the merits; (2) whether the applicants will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  See Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  Because granting a stay is "an exercise of judicial discretion", not a matter of right, a stay applicant "bears the burden of showing the circumstances justify an exercise of that discretion."  Nken v. Holder, 556 U.S. 418, 433-34 (2009).  Although these are the same factors the Court considers in deciding whether to grant a preliminary injunction, an applicant seeking a stay has, relatively speaking, more difficulty establishing the first factor, likelihood of success on the merits, due to the difference in procedural posture.  See Dehainaut v. Cal. Univ. of Penn., No. 10-899, 2011 WL 3810132, at *2 (W.D.Pa. Aug. 29, 2011).  "[A] party seeking a stay must ordinarily demonstrate to a

reviewing court that there is a likelihood of reversal." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153-54 (6th Cir. 1991). As such, "the [stay applicant] is always required to demonstrate more than the mere 'possibility' of success on the merits." Id. In other words, "even if [a stay applicant] demonstrates irreparable harm that decidedly outweighs any potential harm to the [adverse party] if a stay is granted, he is still required to show, at a minimum, serious questions going to the merits." Id. (internal quotations omitted).

**THE PLAINTIFFS** argue that (1) they are likely to succeed on the merits of the appeal because the reviewing court will apply de novo review and the defendants are not entitled to enforcement of the settlement agreement as a matter of law; (2) they will be irreparably harmed if the settlement agreement is enforced because, as the patents at issue represent "the embodiment of [the individual plaintiff's] life's work", enforcement of the settlement agreement is "a horrific outcome for [the plaintiffs]" resulting in "incalculable" losses; (3) a stay would not substantially injure the defendants because the defendants could continue marketing their products and would avoid immediate payment of the required $300,000 settlement amount; and (4) public interest favors entry of the stay in order to ensure "that a patent holder is not wrongfully

3

deprived of the fruits of his labors." (See dkt. entry no. 208, Pl. Br. in Supp. of Mot. at 4-30 ("Pl. Stay Br.").)

**THE DEFENDANTS** argue in response that (1) the plaintiffs do not demonstrate the "strong showing" of likelihood of success on the merits because the undisputed material facts show mutual agreement to the essential terms of the settlement agreement; (2) the plaintiffs will not be irreparably harmed by enforcement of the settlement agreement because the agreement merely grants the defendants a non-exclusive license, which would still permit the plaintiffs to enforce their patent rights against others; (3) the defendants would be substantially injured if the agreement were not enforced because it would prolong uncertainty in the litigation and deprive the defendants of the benefit of the parties' bargain; and (4) "[i]t is well-settled that settlement agreements are encouraged as a matter of public policy because they promote amicable resolution of disputes and lighten the increasing load of litigation faced by courts." (See Defs. Opp'n Br. at 1-14.)

**THE COURT** begins by determining whether plaintiffs have made a strong showing that they are likely to succeed on the merits - at a minimum, demonstrating the existence of "serious questions going to the merits." Dehainaut, 2011 WL 3810132, at *2. The plaintiffs have not done so. Instead, the plaintiffs essentially challenge the factual findings of the Court by advancing several of the same

4

arguments that they did in their opposition to the defendants' motion to enforce the settlement agreement, such as: contending that no agreement was reached on August 7, 2012; arguing that "[Defendants'] August 8, 2012 email was a counteroffer that caused the August 7 offer to cease to exist"; arguing that defendants' August 9, 2012 request for "minor revisions" was a counteroffer; arguing that the plaintiffs' counsel did not have apparent authority to enter into a settlement agreement; and arguing that the defendants were rejecting offers, not "posturing". (Compare dkt. entry no. 191, Pl. Opp'n to Mot. to Enforce Settlement at 26-39, with Pl. Stay Br. at 4-25.)

**THE PLAINTIFFS** also contend that the Court's "criticism of [the plaintiffs] was essentially for . . . not waiving the attorney client privilege". (Pl. Stay Br. at 24.) As the Court noted in its 3-18-13 Memorandum Opinion, the plaintiffs argue that they did not explicitly agree to the settlement agreement, and thus their attorneys had no actual authority to enter into the agreement. (See 3-18-13 Mem. Op. at 17, 19 ("Thorner claims that his counsel had no actual authority to accept the Settlement Agreement, [but] Thorner has submitted no sworn statements or other evidence that he objected to the terms of the agreement proposed by the Niro Firm prior to the parties accepting it.").) "[B]y voluntarily placing in issue what he may have previously stated to his lawyer, or what

5

his lawyer may have stated to him, a client may forfeit the protections of attorney-client confidentiality." In re Peter, Susan, & Steven Linder Irrevocable Trust, No. A-0634-10T1, 2011 WL 721967, at *6 (N.J.App.Div. Mar. 3, 2011); see also Blitz v. 970 Realty Assocs., 233 N.J.Super. 29, 35 (App.Div. 1989) ("when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege"); Weingarten v. Weingarten, 234 N.J.Super. 318, 325 (App.Div. 1989) (stating that the attorney-client privilege is waived when the information sought is "'highly germane to a critical issue raised by the party seeking to invoke' the privilege"). Here, the plaintiffs argued they had never granted actual authority to their counsel to enter into the settlement agreement, making the contents of their previously confidential communications with their lawyers with respect to that authority a material issue in the judicial proceeding. As such, the Court finds that this first factor weighs against the granting of the stay.

**THE COURT** next determines whether the plaintiffs have demonstrated irreparable injury absent a stay. The plaintiffs have only pointed to injury suffered due to the plaintiffs' inability to exclude others from infringing their patent rights. (See Pl. Stay Br. at 28.) However, enforcement of the settlement agreement will not preclude the plaintiffs from enforcing their patent rights

6

against any infringers except those with whom they have negotiated a non-exclusive license, namely the defendants. (See Defs. Opp'n Br. at 12-13.) Moreover, the plaintiffs also claim that the inability to retain exclusivity over use of the patented technology will deter the plaintiffs from continuing to invest in and develop their business. (See Pl. Stay Br. at 28.) The Court notes that enforcement of the stay will provide the plaintiffs with $300,000 as a return on investment in their business; the Court further notes that the plaintiffs currently remain in vigorous pursuit of other alleged infringers, despite the Court's previous grant of the motion to enforce the settlement. See, e.g., Virtual Reality Feedback Corp. v. Wal-Mart Stores, Inc., No. 12-4968 (D.N.J. 2012) (plaintiffs appeared for an initial conference with the Magistrate Judge on March 5, 2013).[1] Hence this factor also militates against granting a stay.

    **THE COURT** briefly notes that the final two factors do not compel the Court to conclude that the equities favor granting a stay. The plaintiffs state that "[the defendants] will not be materially harmed by the entry of a stay" because they can continue marketing the products and could avoid immediate payment. (See Pl.

---

[1] The defendants request the Court permit them to post a bond with the Clerk of the Court to cover the settlement payment in the event the Court denies the request for a stay so as to avoid issues of recovering the settlement payment in the "unlikely event that [the plaintiffs] prevail[] on [their] appeal." (Defs. Opp'n Br. at 13.)

Stay Br. at 29.)  The defendants claim they will be substantially injured in the event of a stay because it would deny the parties the benefit of their bargain and prolong the uncertainty of the litigation.  (See Defs. Opp'n Br. at 13-14.)  The plaintiffs have not demonstrated that the defendants will not be substantially injured.  Finally, the public interests in this case are at best in equal proportion: the interest in preserving patent exclusivity rights and the interest in promoting efficient and voluntary settlement of lawsuits.  (See id. at 14; see also Pl. Stay Br. at 29.)  Considering that granting a stay is not a matter of right, but rather "an exercise of judicial discretion", the Court must be convinced that the stay applicant has borne the "burden of showing the circumstances justify an exercise of that discretion."  Nken, 556 U.S. at 433-34.  Thus, the plaintiffs have not carried their burden with respect to any of the four factors to demonstrate entitlement to entry of a stay.

**THE COURT** acknowledges that the plaintiffs may now immediately move for temporary relief from the 3-18-13 Order before the Court of Appeals for the Federal Circuit.  See, e.g., Fed.R.App.P. 8(a)(2)(A)(ii), (a)(2)(B); Fed.Cir.R. 8(a)-(c); see also Leinster Inter S.A. v. Botley Ltd., No. 09-3874, 2009 WL 5246211, at *1 (S.D.N.Y. Dec. 30, 2009) (declining to issue a temporary stay of an order that was on appeal, but acknowledging party's ability to seek

such relief from the Court of Appeals under the Federal Rules of Appellate Procedure).  The Court offers no opinion as to the merits of such a motion.

**THE COURT**, for good cause appearing, will thus enter an appropriate Order denying the motion.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Date:    May 3, 2013